# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**MARILYN NORWOOD**                                                    **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO. 3:12CV66 HTW-LRA**

**MICHAEL J. ASTRUE**
**COMMISSIONER OF SOCIAL SECURITY**                        **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff appeals the Administrative Law Judge's decision denying her applications for Social Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The Commissioner opposes the motion and requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

### Procedural Background

Plaintiff first filed applications for SSI and DIB in September 2005. An unfavorable decision denying her claims was rendered on August 15, 2008. In February 2009, she filed renewed applications which were denied initially and on reconsideration. She claimed an onset date of August 15, 2008 for DIB, and September 13, 2004 for SSI.

On September 9, 2010, Administrative Law Judge Elizabeth De Gruy ("ALJ") issued a second unfavorable decision finding that Plaintiff had not established disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review and she now appeals that decision.

Plaintiff was 48 years old at the time of the ALJ's decision and alleges disability due to high blood pressure and neck pain. She attended school through the seventh grade, and has a past relevant work history as a wire taper, cashier, poultry eviscerator, cook, molder, poultry hanger, and sewing machine operator.

At step one of the five-step sequential evaluation,[1] the ALJ found that res judicata applied though August 15, 2008, and that Plaintiff had not engaged in substantial gainful activity since that date. At steps two and three, the ALJ found that although Plaintiff's "status post anterior cervical discetomy and fusion" were severe, she did not have an impairment or combination of impairments that met or medically equaled any listing. At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work, "except she can push/pull 20 pounds occasionally and 10 pounds frequently. She cannot work above shoulder height, she cannot do work that requires looking up, and she can sit, stand, and walk six hours in an eight hour day."[2] Relying on vocational expert testimony at step five, the ALJ found that Plaintiff can perform her past relevant work as a wire taper, cashier, and sewing machine operator.

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2] ECF No. 8-2, p. 19.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Norwood raises three primary issues on appeal: (1) the ALJ erred in failing to find that her depressive disorder was a severe impairment at step two; (2) the ALJ failed to apply the proper legal standard in evaluating whether her alleged mental retardation meets or medically equals listing 12.05C; and, (3) the ALJ failed to properly evaluate the physical and mental demands of her past relevant work.

**1. Substantial evidence supports the ALJ's nonseverity determination.**

Plaintiff argues that the ALJ erred in failing to find that her depression was a severe impairment at step two. In support, she alleges the ALJ summarily dismissed the examination findings of state agency psychologist, Dr. Joseph Dunn, who diagnosed her with major depressive disorder without psychosis. However, the undersigned finds that a neutral reading of the ALJ's opinion reflects that she considered Dr. Dunn's diagnosis in finding that Plaintiff's depression was a medically determinable impairment; she ultimately concluded that the overall evidence of record established that Plaintiff's depression was not severe. Substantial evidence supports this decision.

In evaluating the severity of each of Plaintiff's impairments, the ALJ expressly relied on *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985)*,* in compliance with controlling Fifth Circuit law. *Stone* holds that an impairment is not severe "'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Id.* at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984)).[3] In evaluating the severity of Plaintiff's depression here, the ALJ noted that Plaintiff never received any mental health treatment for her depression, nor did her medical

---

[3] *See also Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (citing *Stone*, 752 F.2d at 1101) (unpublished )("An impairment is severe if it significantly limits an individual's physical or mental abilities to do basic work activities; it is not severe if it is a slight abnormality . . . that has no more than a minimal effect on the claimant's ability to do basic work activities.").

4

records reflect any ongoing complaints of depression. She did not allege depression at the initial level or on reconsideration either. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989). Plaintiff does not dispute any of these points on appeal, except to say that her family clinic was "concerned with the treatment of physical health issues."[4] Be that as it may, the ALJ properly considered Plaintiff's failure to seek treatment for her condition. *Doss v. Barnhart*, 137 F. App'x 689 (5th Cir. Tex. 2005).

In addition to *Stone*, the ALJ applied the Psychiatric Review Technique required by 20 C.F.R. § 1520a(d)(1), and concluded that Plaintiff's depression produced no more than mild limitations in activities of daily living, social functioning, and concentration, persistence, and pace, and no episodes of decompensation. This is consistent with Dr. Dunn's observations and the overall evidence of record. As discussed by the ALJ, Dr. Dunn observed that Plaintiff had slow cognitive processing but was oriented as to time, place, person and situation. He also found that she had an adequate fund of knowledge and was able to perform basic calculations, manage funds, and make purchases independently. There was no credible evidence that Plaintiff's depression interfered with her activities of daily living. She occasionally goes to church, shops, drives, and interacts with family, including caring for her mother. Any limitations in functioning were attributed to her physical pain, not depression. Although Dr. Dunn coded her depression as an Axis I disorder, he ultimately concluded that her psychological status was

---

[4]ECF No. 10, p. 23.

"primarily secondary to her physical status."[5] State medical consultant, Dr. Glenda Scallorn, similarly found that Plaintiff could work "without excessive interference from psychologically based symptoms." And, it is further noted that Plaintiff quit her last job because of the limiting effects of her physical pain, not depression.

Even if the ALJ erred as Plaintiff argues, the failure to make a severity finding at step two alone is not grounds for automatic reversal or remand. *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis). "*Stone* merely reasons that the [severity] regulation cannot be applied to summarily dismiss, **without consideration of the remaining steps in the sequential analysis**, claims of those whose impairment is more than a slight abnormality." *Loza v. Apfel*, 219 F.3d, 378 391 (quoting *Anthony*, 954 F.2d at 294)(emphasis added). Plaintiff's claims were not summarily dismissed at step two here. After finding that Plaintiff's cervical impairment was severe at step two, the ALJ found that Plaintiff had the residual functional capacity to return to her past relevant work. In making this finding, the ALJ considered all of Plaintiff's medically determinable impairments and their limiting effects. *Graves v. Astrue*, 2:07 CV306 KS-MTP, 2008 WL 4093726 (S.D. Miss. Aug. 27, 2008) (citing 20 C.F.R. §§404.1523 & 416.923). Thus, this case did not turn on the ALJ's finding that Plaintiff's depression was not severe, but on whether Plaintiff had the residual functional capacity to perform her

---

[5]ECF No. 8-7, pp. 42-45, 63.

past relevant work – "an inquiry unaffected by the test set forth in *Stone*." *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987).

### 2. The ALJ applied the proper standard in evaluating Plaintiff's mental retardation.

Plaintiff argues next that the ALJ erred in failing to find that her mental retardation claim meets or medically equals Listing 12.05C. To satisfy Listing 12.05C, Plaintiff must show that her condition satisfies both the diagnostic description of mental retardation outlined in the introductory paragraph of 12.05 and the severity criteria enumerated in Subsection (C). *Randall v. Astrue*, 570 F.3d 651, 657-59 (5th Cir. 2009). The diagnostic description defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Subsection (C) requires a claimant to show intelligence testing with "a valid verbal, performance, or full scale IQ of 60 though 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. But before reaching the severity criteria of Subsection (C), a claimant must initially satisfy the Listing's three diagnostic criteria by demonstrating: (1) significant subaverage general intellectual functioning with (2) deficits in adaptative behavior (3) originating before the age of 22.

7

In the instant case, Plaintiff first argues that the ALJ erred in failing to use one of the methodologies recognized and endorsed by a professional mental health organization for measuring adaptive functioning. Specifically, she argues the ALJ should have used the methodology established by the American Psychiatric Association in The Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") purportedly adopted by the Social Security Administration ("SSA") in its 2002 publication of the <u>Technical Revisions to Medical Criteria for Determinations of Disability</u>. According to Plaintiff, the DSM-IV definition requires a claimant to show "significant limitations in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work leisure, health, and safety." DSM-IV at 39. Had the DSM-IV definition been applied, Plaintiff submits the ALJ would have found she had deficits in adaptive functioning sufficient to satisfy the Listing's diagnostic criteria.

The Commissioner argues that Plaintiff misconstrues the publication and advises that the Social Security Administration ("SSA") has never required an ALJ to employ one of the methodologies endorsed by a professional mental health organization when measuring adaptive functioning. The SSA has explained as follows:

> Comment: One commenter recommended that we use the definition of mental retardation (MR) found in the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV), published by the American Psychiatric Association, as the definition of MR in listing 12.05 and 112.05.

8

> Response: We did not adopt the comment. The definition of MR [i.e., mental retardation] we use in our listing is consistent with, if not identical to, the definitions of MR used by the leading professional organizations. The four major professional organizations in the United States that deal with MR have each established their own definition of MR. While all the definitions require significant deficits in intellectual functioning, as evidenced by IQ scores of approximately 70 or below, age of onset and the method of measuring the required deficits in adaptive functioning differ among the organizations.
>
> . . .
>
> The definition of MR used by SSA in the listings is not restricted to diagnostic uses alone, ***nor does it seek to endorse the methodology of one professional organization over another***. While capturing the essence of the definitions used by the professional organizations, it also is used to determine eligibility for disability benefits. SSA's definition establishes the necessary elements, ***while <u>allowing</u> use of any of the measurements methods recognized and endorsed by the professional organizations.***

<u>Technical Revisions to Medical Criteria for Determinations of Disability</u>, 67 Fed. Reg. 20018-01, at 20022 (April 24, 2002) (emphasis added). The plain language of the revision is clear. The Listing for mental retardation sufficiently establishes the necessary elements for measuring adaptive functioning. While ALJ's are "allowed" to use any of the methodologies endorsed by a professional organization, he or she is not required to do so. The undersigned concludes that there was no error in the ALJ's analysis regarding mental retardation.[6] The proper legal standard was applied here.

Plaintiff next contends that substantial evidence does not support the ALJ's conclusion that her mental retardation claim fails to satisfy 12.05C. As noted above, to meet Listing 12.05, there are three criteria that must be initially satisfied: (1) significant subaverage general intellectual functioning; (2) deficits in adaptive functioning; and,

---

[6] Plaintiff has acknowledged that the SSA had "expressly declined to adopt any particular [definition of deficits in adaptive functioning]" in the briefing she submitted at the administrative level. ECF No. 8-6, p. 83.

(3) the onset of deficits before age 22. Only elements two and three are in dispute here.

As proof of her deficits before age 22, Plaintiff points to her placement in special education classes and the fact that she has only a seventh grade education. Such evidence--while probative--is not dispositive. *Morris v. Astrue*, No. 10-3339, 2011 WL 7341504 (E.D. La. Dec. 14, 2011). Plaintiff was in special education classes for three grades and was eventually promoted to regular classes. She also testified that she can read and write, and though she dropped out in the seventh grade, nothing in the record indicates she did so because of poor academic performance.

The ALJ also considered the fact that Plaintiff worked at a substantial gainful activity level performing unskilled and semi-skilled work for several years before filing her application for benefits.[7] She observed that as recently as 2008, Plaintiff worked full-time for approximately three months indicating that "she is not so adaptively limited as to be unable to work." Social Security regulations permit an ALJ to consider a claimant's work history when evaluating a mental retardation claim. *Muse v. Sullivan*, 925 F.2d 785, 789-90 (5th Cir. 1991); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992); *Outlaw v. Barnhart*, 197 F. App'x. 825, 827 (11th Cir. 2006); *Caradine v. Astrue*, No. 1:08cv305 DAS, 2009 WL 3769771 at *4 (N.D. Miss. Nov. 10, 2009). The Listings also expressly provide that the circumstances surrounding the termination of a claimant's work are "particularly useful in determining [the claimant's] ability or inability to function in a

---

[7]ECF No. 8-2, p. 20.

work setting." 20 C.F.R. Pt. 404, Supt. P., App. 1, § 12.00(D). Here, while Plaintiff correctly notes that she primarily engaged in unskilled work, the evidence indicates that she quit her last job because of the limiting effects of her physical pain, not because her mental impairments interfered with her ability to work. *See Muse*, 925 F.2d at 789-90 (5th Cir. 1991) (ALJ properly discounted claimant's mental retardation claim in light of evidence that he worked as a truck driver and had never been fired from a job because he could not comprehend, remember, or carry out the mental rigors of work).

Still, Plaintiff contends that the ALJ was overly concerned with her current levels of adaptive functioning while "the elements of 12.05C are concerned with the presence of deficits in adaptive functioning before age 22."[8] The Fifth Circuit has recently clarified, however, the "precise relationship between the diagnostic description's substantive requirements ('significantly subaverage intellectual functioning with deficits in adaptive functioning'), and its temporal requirement ('initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22'). . . ." *Randall,* 570 F.3d at 656. In *Randall*, the Court explained that there was "no principled basis for giving effect to only part of the diagnostic description. That is, nothing in Listing 12.05 suggests that the temporal language is any more binding than is the substantive portion of that very same sentence." *Id.* at 659. An ALJ is thus required to consider a claimant's adaptive functioning relative to both the substantive and the

---

[8]ECF No. 10, p. 19.

11

temporal requirements, i.e. both before and after the age of 22. "The Listing, by its very nature, presumes that the plaintiff will show that the adaptive functioning, while originally and necessarily manifesting at a young age, is *currently* present. That is the definition of disability under the regulations." *Cogdell v. Astrue*, No. 8:10-105 JFA-BHH, 2010, WL 6243317 (D.S.C. Dec. 20, 2010) (citing 42 U.S.C. § 423(d)(1)(A)) (emphasis added).

Although not expressly defined in 12.05, adaptive functioning is generally described in Listing 12.00 as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Supt. P, App.1, § 12.00 (C)(1); *Blancas v. Astrue*, 690 F.Supp. 2d 464, 476 (W.D. Tex. 2010). Here, Plaintiff testified that she goes grocery shopping when needed, drives locally, attends church, and interacts with family. She also sits with and prepares meals for her mother three to four days per week. She also does light cooking, laundry, attends to her personal hygiene, manages funds, and makes purchases independently.[9] Further, a state medical consultant who performed a Psychiatric Review Technique concluded that she had no significant limitations in her ability to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; and, to set realistic goals or make plans

---

[9]ECF No. 8-2, pp. 33-34.

independently of others.[10] Simply put, Plaintiff has not carried her burden of meeting the diagnostic description's substantive requirement.

Plaintiff also argues that the ALJ had an affirmative duty under Social Security Ruling 96-6p to obtain an updated medical expert opinion on medical equivalence as to her mental retardation claim.[11] An ALJ is not required to obtain an updated medical opinion on the issue of equivalency where, as here, substantial evidence supports the ALJ's finding that the Plaintiff does not meet a Listing. So long as sufficient evidence exists, the ALJ has no duty to request additional evidence. *See Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). Further, remand for failure to comply with a social security regulation is appropriate only when a claimant affirmatively demonstrates prejudice. *Mays v. Bowen*, 837 F.32d 1362, 1364 (5th Cir. 1988)). Plaintiff has failed to show that her substantial rights were affected by the ALJ's failure to obtain an updated opinion here.

---

[10] ECF No. 8-7, p. 62. *See Arce v. Barnhart,* 185 Fed.App'x 437, 439 (5th Cir. 2006) (finding substantial evidence that claimant, who was capable of housecleaning, using a computer, grooming, and getting along with others, but who required help cooking, paying bills, shopping, riding the bus and caring for her children, did not have deficits in adaptive functioning and therefore did not meet listing 12.05(C)) (unpublished); *Bullard v. Astrue*, 2009 WL 3101002 at *8 (S.D. Tex. Sept. 23, 2009) (substantial evidence supported ALJ's finding that Plaintiff did not satisfy the diagnostic criteria where claimant had participated in the work force for much of his adult life and was largely independent in his activities of daily living).

[11] ECF No. 9-2, p. 18.

13

In sum, the ALJ's decision comports with the all relevant legal standards, and substantial evidence supports her finding that Plaintiff did not have the requisite deficits in adaptive functioning to satisfy § 12.05(C). No remand is warranted on this issue.

### 3. The ALJ did not commit reversible error in finding that Plaintiff has residual functional capacity to perform her past relevant work.

Plaintiff argues that the ALJ erred in finding that she has the residual functional capacity to perform her past relevant work. Social Security Ruling 82-62 requires that when an ALJ determines that a plaintiff retains the residual functional capacity to perform past relevant work, the ALJ must make findings of fact as to: (1) the individual's residual functional capacity; (2) the physical and mental demands of the past work, and (3) the individual's residual functional capacity to return to his or her past job. SSR 82-62,1982 WL 31386, at *4 (S.S.A. Nov. 30, 1981). Here, the ALJ found that Plaintiff had the residual functional capacity to return to her past relevant work as a wire taper, cashier, and sewing machine operator as "actually and normally performed." But the only job that Plaintiff specifically takes issue with is the ALJ's assessment that she can return to work as a sewing machine operator because it is classified as semi-skilled by the *Dictionary of Occupational Titles*. She alleges on appeal that her actual performance as a sewing machine operator was unskilled, and asserts that the ALJ's failure to make findings of fact as to the physical and mental demands of *this* job was reversible error.

The Commissioner acknowledges that the ALJ failed to provide detailed findings concerning the physical and mental demands of Plaintiff's past relevant work, but

14

maintains that Plaintiff bears the burden of demonstrating that she is unable to perform her past relevant work. *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988) (citations omitted). The Commissioner also suggests that while the ALJ did not cite to SS 82-62, she made the requisite factual findings by determining that Plaintiff has the residual functional capacity to perform her past relevant work as a sewing machine operator – the physical and mental demands of which were described as light and semi-skilled by the ALJ.

While more explicit findings of fact as to the physical and mental demands of this job would have been preferable, the Court finds that the ALJ's failure to do so here did not affect Plaintiff's substantial rights for two primary reasons. First, Plaintiff is effectively asking this Court to assume that the nature of her work as a sewing machine operator was unskilled, but she does not proffer or direct this Court to any evidence in the record to support her contention. Nor does she identify which work requirements she performed as a sewing machine operator that she can no longer do and the reasons why. Although an ALJ has a duty to make the requisite factual findings, Plaintiff has failed to meet her threshold burden of demonstrating that she cannot perform her past relevant work, even if it was performed as unskilled.[12] Second, any error in finding that Plaintiff

---

[12] *See Henrie v. U.S. Dept. Of Health & Human Serv*., 13 F.3d 359 (10th Cir. 1993) (acknowledging the tension created between the mandate of SSR 82-62 and the claimant's burden of proof, and finding that the ALJ's duty is one of inquiry and factual development while the claimant continues to bear the ultimate burden of demonstrating disability).

could return to work as a sewing machine operator was harmless because the ALJ still identified past relevant work that Plaintiff could perform, as it is normally performed, in the national economy. *Rubio v. Astrue*, No. SACV 09-420-OP, 2009 WL 4907752, *9 (C.D. Cal. Dec. 11, 2009) (citations omitted). Substantial evidence supports the ALJ's finding that Plaintiff has the residual functional capacity to perform past relevant work as a wire taper and cashier, both of which are light and unskilled.

Finally, Plaintiff claims that the ALJ erred in failing to include a limitation to simple repetitive tasks in her hypothetical to the vocational expert. She maintains that such a limitation is consistent with her past work experience and low I.Q. scores. Again, the Court finds no error. An ALJ's hypothetical need only "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Bowling*, 36 F.3d at 436. Also, the vocational expert testified on cross-examination that even if Plaintiff were limited to simple repetitive tasks, she could still perform work as a wire taper and cashier because those jobs are unskilled.[13]

Based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to be disabling. The undersigned's review of the record compels a finding that the ALJ applied the correct legal standard and that substantial evidence supports the ALJ's decision.

---

[13]ECF No. 8-2, p. 48.

## Conclusion

For all the above reasons, it is the opinion of the undersigned United States Magistrate Judge that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

In accordance with Local Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* and 28 U.S.C. § 636, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections to the Report and Recommendation. The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendation contained within this Report and Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 22nd day of February 2013.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE